247 So.2d 151 (1971)
COLLECTOR OF REVENUE
v.
J. L. RICHARDSON COMPANY.
No. 4339.
Court of Appeal of Louisiana, Fourth Circuit.
April 5, 1971.
Rehearing Denied May 10, 1971.
Writ Refused June 7, 1971.
*153 Donald C. Theriot, James W. Murray, Levi A. Himes and James A. Norris, Jr., Baton Rouge, for plaintiff-appellee.
Simon & Simon, Warren M. Simon, Jr., New Orleans, for defendant-appellant.
Before LEMMON, GULOTTA and STOULIG, JJ.
GULOTTA, Judge.
The defendant-appellant, J. L. Richardson Company, appeals herein from an adverse judgment ordering the payment to the Collector of Revenue of the State of Louisiana, plaintiff-appellee, the sum of $19,109.79 together with interest at the rate of six percent (6%) per annum from December 5, 1965, to December 5, 1969, and three percent (3%) per annum thereafter until paid. The assessment and judgment is based upon the failure of J. L. Richardson Company, hereinafter designated as taxpayer, to pay to the Collector of Revenue, hereinafter designated as Collector, a sale or use tax and occupational tax on merchandise, food, and housekeeping equipment purchased from various vendors.
The appellant taxpayer filed a petition before the Board of Tax Appeals after he had been notified by the Collector of their intention to assess a use tax and an occupational tax for the tax period from January 1, 1960, through September 30, 1963, together with interest and penalties. The taxpayer sought a dismissal of the assessment levied against him.
After a hearing before the Board of Tax Appeals, the Board on February 27, 1969, rendered a judgment dismissing the assessment filed by the Collector against the taxpayer.
The Collector filed a petition in the Civil District Court for the Parish of Orleans seeking a review of the decision of the Board of Tax Appeals.
The trial court rendered judgment in favor of the Collector of Revenue and against taxpayer, thereby setting aside the judgment of the Board of Tax Appeals. Taxpayer appeals suspensively from the judgment of the trial court.
The facts are that J. L. Richardson Company, a foreign corporation, qualified to do business in the State of Louisiana, was engaged in the business of purchasing, preparing, and serving food as well as providing housekeeping duties on drilling rigs during the tax period in question, from January 1, 1960, through September 30, 1963. The oil rigs are located in the Gulf of Mexico beyond the territorial limits of the State of Louisiana in that area referred to as the outer continental shelf.
Taxpayer, Richardson, executed written contracts with its principals whereby Richardson performed the services of preparing and serving food and providing housekeeping duties on the rigs. In furtherance of fulfilling the contracts, appellant made purchases from Louisiana vendors consisting of food items, janitorial supplies, and cooking equipment, as well as other necessary items. The written contract provided *154 that the principal and not Richardson would provide all over-water transportation for supplies and personnel to the principal's rig location.
The supplies were ordered through requisition forms prepared by employees of appellant, Richardson, and were sent to Louisiana vendors to be filled. The Louisiana vendors, as requested in the requisition, delivered the supplies on a certain date to a particular Louisiana shore dock where the supplies were accepted and receipted for by a person who was a dispatcher. The dispatcher had authority to receipt for the supplies. However, he was an employee of the oil company or other companies involved in the operation but was not an employee of the defendant, Richardson.
Defendant-appellant taxpayer contends that the tax imposed is a use tax and is designated as such in the assessment. A use tax can only be assessed on items or articles that are used, consumed, or distributed and stored for use or consumption "in this state" under LSA-R.S. 47:302(A). The State cannot assess the tax against defendant because these articles are not for use in this state but are to be used and consumed on an oil rig located outside the jurisdiction of the State in the Gulf of Mexico and are destined for export outside of Louisiana.
Appellant contends that the trial court erred in applying the statutes relating to sales for retail rather than those provisions relating to use tax.
A further contention of appellant is that any sales tax assessment is prescribed since the assessment of a use tax does not interrupt the running of prescription for the collection of sales tax.
The appellee Collector contends that appellant is estopped from raising on appeal for the first time the distinction between a sales and a use tax. Appellant on the other hand claims that since a use tax was originally levied against taxpayer, the Collector is estopped from now contending the assessment is for a sales tax. The Collector argues that a defense not pleaded in the trial court cannot be raised for the first time on appeal. Appellee further argues that the assessment is in fact a sales tax on merchandise sold for retail, that the sale took place in Louisiana between the seller or dealer of the various items and the purchaser taxpayer, and that this sale for retail was completed upon an agreement being reached between the parties on the object and price irrespective of the fact that the objects had not yet been delivered or the price yet paid.
Appellee claims that the goods were purchased from Louisiana vendors in Louisiana and were transported by a third party contractor to the rig site located on the outer continental shelf and thus were not destined for export. It is appellee's view that since this merchandise is ultimately destined to be transported and used on an oil rig within the jurisdiction of the United States, it cannot be merchandise destined for export because merchandise designated for export is by definition destined for a foreign port, foreign nation or foreign jurisdiction.
The Collector further contends that though the statute relating to sales tax places the responsibility on the seller to collect the tax for and on behalf of the State, which amount is to be subsequently paid to the State, this provision does not preclude the Collector from making assessments and collecting the taxes directly from the purchaser.
The Collector claims that the filing of the assessment of the use tax within the prescriptive period in accordance with LSA-R.S. 47:1580 interrupted prescription and, therefore, the tax has not prescribed.
The first question for consideration is whether the taxpayer can raise for the first time on appeal a defense not raised in the trial court or before the Board of Tax Appeals, namely, that a use tax rather than a sales tax was assessed and that any consideration *155 by this court of the imposition of a sales tax is irrelevant. We cannot concur with the Collector's argument that this issue was raised for the first time by appellant in the appellate court. An examination of the petitions, memoranda, and briefs of both Taxpayer and Collector before the Board of Tax Appeals and in the trial court reveals that this issue was raised below, although perhaps not as explicitly as on appellate review. Therefore, we find no merit in this contention by the Collector.
The next question presented on review is whether or not the transaction involved herein is a sale at retail, therefore, giving rise to the imposition of a sales tax. The evidence reflects that the agreement for the purchase of a particular object at a particular price was reached at such time as the vendors prepared the purchase order for delivery to the dock. Any doubt as to whether a sale did in fact take place is eliminated by the subsequent delivery of the object by the vendors and the receipt of the items by the dispatcher. LSA-C.C. art. 2456 sets out the requirements for a contract of sale.
"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
In the case of Edgwood Co. v. Falkenhagen, 151 La. 1072, 92 So. 703 (1922), rehearing denied July 17, 1922, the Court discussed when a sale is considered executed.
"`"Any act indicating a definite intention to appropriate the goods to the contract is sufficient, such as setting apart and marking the goods for the buyer. * * * An appropriation by the seller alone will not pass title unless assented to by the buyer. This assent may, however, be either express or implied, and may be given by one party either before or after the act of appropriation by the other." 16 Cyc. 296, 297.
* * * * * *
`"In State v. Shields, 110 La. 547, 34 So. 673, Kessler v. Manhein, 114 La. 619, 38 So. 473, and Witt Shoe Co. v. Seegars, 122 La. 145, 47 So. 444, the question involved was simply whether an executory agreement to sell and buy indeterminate objects was a completed contract of sale. The court held that such a contract was not a sale until there had been an appropriation of the specific objects which were to become the property of the buyer, and that no such appropriation had been made at the time of such agreement. What was said about delivery to a carrier or warehouseman was undoubtedly germane to the subject, since a delivery is necessarily an appropriation. But the two are not the same, the one being essential to the completion of the sale, the other not so; and the court was not specially concerned in those cases, as it is in this, with the precise issue whether there can be an appropriation without a delivery.'"
In light of the Edgwood Case, supra, it, therefore, becomes apparent that the "sale" in the case at bar was consummated and perfected in Louisiana. Thus, a taxable incident occurred within the State. According to LSA-R.S. 47:302, sales taxes and use taxes can be levied on items sold or used in this state. Thus, the next question for our consideration is whether the so-called sale at issue is a sale at retail and hence subject to a sales tax under the provisions relating to sales tax or whether the incident occurring within Louisiana entails only use tax liability. LSA-R.S. 47:301 (10) defines retail sales as follows:
"`Retail sale,' or `sale at retail,' means a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property, and shall mean and include all such transactions as the collector, upon investigation, finds to be in lieu of sales; provided *156 that sales for resale must be made in strict compliance with the rules and regulations. Any dealer making a sale for resale, which is not in strict compliance with the rules and regulations, shall himself be liable for and pay the tax.
"The term `sale at retail' does not include sales of materials for further processing into articles of tangible personal property for sale at retail, nor does it include an isolated or occasional sale of tangible personal property by a person not engaged in such business."
LSA-R.S. 47:301(18) and (19) define use and use tax as follows:
"`Use' means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof, except that it shall not include the sale at retail of that property in the regular course of business.
"`Use tax' includes the use, the consumption, the distribution and the storage, as herein defined."
The significant factor in determining whether or not the property is subject to a sales tax is whether the property is sold to a consumer or to any other person for any purpose other than for resale. The record in this case does not reflect that the property purchased by the taxpayer was resold nor did it imply that it was contemplated that it would be resold. The property, on the contrary, was to be used in furtherance of carrying out the contracts entered into by taxpayer Richardson with other contractors for use on the oil rigs located on the outer continental shelf.
We are of the opinion, therefore, that if the property is subject to the imposition of a tax, it is in fact subject to the imposition of a sales tax and not a use tax. It is of moment to take cognizance of the fact that the statutes relating to sales tax and use tax provide for the same amount of tax to be imposed and collected and provide for the same prescriptive period, LSA-R.S. 47:302 and LSA-Constitution of 1921, Art. 19, Sec. 19.
Appellant taxpayer contends that the tax levied is a use tax and was assessed as such and was not assessed as a sales tax. Appellant's further argument is that the assessment of a use tax is prohibited because the state cannot levy and collect a use tax for the reason that the subject property being taxed was used outside of the State of Louisiana on oil rigs on the outer continental shelf and was purchased as property destined for export and therefore not taxable. Both of these arguments are untenable. The mere misnomer of a tax designation by an agent of the Collector is not controlling as to the nature of the tax. The nature of the transaction rather than the assessment classification is determinative of the type of tax involved. The nature of this transaction was that of a retail sale within the State. The Collector cannot be estopped from collecting a tax due the State because of a misnomer in assessment when in fact taxpayer was put on notice that a tax on the articles was due. Claiborne Sales Company, Inc. v. Collector of Revenue, 233 La. 1061, 99 So. 2d 345 (1957), rehearing denied January 9, 1958, is similar to the case at bar in that both cases involve mistakes of the Collector's agents and in both cases allegations are made that as a result of such mistakes no taxes are due. The Court in Claiborne, supra, held the Collector was not estopped from collecting a sales tax where, as a result of a mistake in classifying the taxpayer as a wholesaler rather than a retailer or dealer, agents of the Collector had informed the taxpayer-company it was not subject to sales tax.
The additional contention of the appellant that the items were destined for export is also untenable. The items and supplies in question were destined for use on oil rigs owned and operated by American companies on the outer continental shelf. The outer continental shelf does not fall *157 within the meaning of a "foreign port". Therefore, the prohibition of the United States Constitution against the states levying any imposts or duties on items carried to foreign countries or foreign ports as imbedded in the United States Constitution, Article 1, Section 10, Clause 2, is inapplicable. In view of the fact that the subject articles were neither destined for foreign ports nor for export, the State has the right to levy an assessment provided other conditions are met. Pittsburgh and Southern Coal Company v. State of Louisiana, 156 U.S. 590, 15 S.Ct. 459, 39 L.Ed. 544 and Brown v. Houston, 114 U.S. 622, 5 S.Ct. 1091, 29 L.Ed. 257.
The United States Supreme Court reaffirmed the principles set forth in Pittsburgh and Southern Coal Company v. State of Louisiana, supra, when it dismissed an appeal from the decision of the Supreme Court of the State of California in the nature of Shell Oil Company v. State Board of Equalization, 64 Cal.2d 713, 51 Cal.Rptr. 524, 414 P.2d 820 (Calif.S.Ct. 1966) wherein that court held that sales of fuel to ships for consumption on their voyages to foreign ports were not sales for export and therefore were subject to California sales tax.
The assessment of sales tax by the Collector is directed against Richardson, taxpayer, who is the purchaser of the subject items and merchandise. The question has been raised as to whether the State is precluded from assessing and collecting a sales tax against the purchaser when the dealer or seller could be held personally liable where he neglects, fails, or refuses to collect the tax. LSA-R.S. 47:304 provides:
"The tax levied in this Chapter shall be collected by the dealer from the purchaser or consumer, except as provided for the collection of the tax on motor vehicles in R.S. 47:303, as amended.
* * * * * *
"Dealers shall, as far as practicable, add the amount of the tax imposed under this Chapter in conformity with the schedule or schedules to be prescribed by the collector pursuant to authority conferred herein, to the sale price or charge, which shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law in the same manner as other debts. Any dealer who neglects, fails or refuses to collect the tax herein provided, shall be liable for and pay the tax himself.
* * * * * *
"Any dealer who fails, neglects, or refuses to collect the tax herein provided, either by himself or through his agents or employees, shall, in addition to the penalty of being liable for and paying the tax himself, be fined not more than one hundred dollars, or imprisoned for not more than three months, or both."
The provision placing the responsibility on the seller or dealer to collect the tax from the purchaser does not preclude the State from proceeding against the purchaser. The tax is due to the State at the time that the sale is consummated; and if the seller fails to collect this tax, the State has a right to proceed directly against the purchaser.
R.S. 47:306(A) (5) in reference to collection of sales tax due states:
"For the purpose of collecting and remitting to the state the tax imposed by this Chapter, the dealer is hereby declared to be the agent of the state." (Emphasis added.)
If the dealer in collecting a sales tax from the purchaser is acting in its capacity as an agent for the State, it would seem logical to assume that the State as Principal should not be precluded from collecting the tax directly from the purchaser and not through its agent.
Additionally, LSA-R.S. 47:2(4) Subsection 4 in defining taxpayer states:
"`Taxpayer' means any person liable to pay a tax or file a return under any provision *158 in which the word `taxpayer' appears, regardless of whether such person has paid any tax or filed the required return." (Emphasis added.)
Thus, Richardson, a purchaser of goods, if found liable to pay the tax, is by definition a taxpayer. Certainly the Collector of Revenue may proceed directly against the taxpayer who owes back taxes.
In view of these statutes and in the absence of any express prohibition to the contrary we find that the State has the right to proceed directly against the purchaser as an alternate remedy to that provided for in R.S. 47:304.
We find, therefore, that the State can properly proceed against the purchaser in the event that the tax is due and owing to the State and the purchaser has failed to pay the tax to the seller.
The contention of appellate taxpayer that the tax liability has prescribed and that prescription was not interrupted is also without merit. The record reflects that the assessment as levied was for taxes due the State on purchases for the years 1960, 1961, 1962, and 1963. R.S. 47:1580 provides,
"The prescription running against any state tax, license * * * shall be interrupted by:
(1) The collector's action in assessing any such amounts in the manner provided by law;
* * * * * *
(3) The filing of any pleadings, either by the collector or by a taxpayer, with the board of tax appeals or any state or federal court;
* * * * * *
"The running of such prescription may also be suspended by means of a written agreement between the taxpayer and the collector made prior to the lapse of the prescriptive period set out in the Constitution of Louisiana."
LSA-Constitution, Art. 19 § 19 reads that,
"* * * all taxes and licenses, other than real property taxes, shall prescribe in three years from the 31st day of December in the year in which such taxes or licenses are due."
The record reflects in the petition by taxpayer before the Board of Tax Appeals and as admitted to in the answer filed by Collector that on October 18, 1963, taxpayer and Collector executed agreements to suspend prescription of the Louisiana Use Tax and Louisiana Occupational License Tax for a period of one year from December 31, 1963, pursuant to the provisions of Section 1580 of Title 47 of the Revised Statutes of 1950.
On November 27, 1964, the taxpayer and Collector executed another agreement to suspend prescription of the Louisiana Sales Tax and Louisiana Occupational License Tax for a period of one year from December 31, 1964.
Thus, by virtue of these agreements, prescription was in fact suspended from December 31, 1963, until December 31, 1965, thereby extending the period of time which Collector had to collect the taxes due by two years.
Under R.S. 47:1580, upon the filing of pleadings by taxpayer with the Board of Tax Appeals on November 24, 1965, prescription was interrupted. Furthermore, a formal tax assessment was made by Collector on November 5, 1965, also interrupting prescription. Therefore, no basis exists for the argument that tax liability has prescribed.
The specific question now to be considered is whether the erroneous assessment or designation as a use tax served to interrupt the tolling of prescription for the collection of a sales tax.
Though, through error of the Collector's agent a use tax rather than a sales tax was assessed, it is evident that the taxpayer was well aware from the time *159 of the assessment that a tax, whether it be a sales tax or a use tax, was being assessed. The amount of the tax is the same in either instance and is imposed under the same statute and provides the same prescriptive period. The mistake or error in mislabeling the tax assessment cannot and has not prejudiced the taxpayer. It is difficult to accept the view that the State can be prejudiced and deprived of the collection of taxes due it because of the misnomer or mistake in labeling an assessment.
The primary purpose of prescriptive periods is to timely advise a person of his potential liability arising from an occurrence or transaction in which he was involved, as well as to put an end to his potential liability if no proceedings are filed within a reasonable period of time.
In this case the taxpayer was advised of his assessed liability as well as of the facts and circumstances giving rise to this liability. The designation of the assessment as a use tax rather than a sales tax cannot deprive the State as a litigant of its substantial right to collect a sales tax due under the law and under the facts and circumstances of the case.
Although no suit for sales tax and no assessment for sales tax have been levied, we are of the opinion that upon the filing of the timely assessment of use taxes, the prescriptive period was interrupted.
By supplemental brief filed herein, the Collector made the additional contention that this Court cannot consider the plea of prescription raised by Richardson, appellant, in briefs and in argument because the plea was not raised in pleadings either in the trial court or in the appellate court. Taxpayer, Richardson, in answer to the issue raised by Collector filed a Peremptory Exception of Prescription in the appellate court on February 24, 1971, while this matter was being considered by the appellate court on review. The jurisprudence is replete with the proposition that prescription may be filed at any time. LSA-C.C. art. 3464 states:
"Prescription may be pleaded in every stage of a cause, even on the appeal, but it ought to be pleaded expressly and specially before the final judgment."
The plea of prescription is a peremptory exception which may be pleaded on appeal; however, it may not be filed after the case has been submitted for a decision.
It should be noted that permission was granted by this Court to the appellee to submit supplemental briefs and appellant was given a period of time within which to answer. Since the plea of prescription was filed in this Court prior to the expiration of the time given for the filing of said supplemental brief and answer, it was, therefore, filed prior to the time the matter was actually "submitted for decision" and was thus a timely pleading.
Despite the timeliness of appellant's exception, the Court is of the opinion that in view of the rationale of the Court relating to the question of prescription considered in the foregoing opinion, the plea of prescription should be overruled.
In view of the conclusions reached by this court in connection with the issues raised in the foregoing opinion, it is apparent that the State is additionally entitled to the imposition of the occupational tax as provided for in LSA-R.S. 47:341. Under those provisions an occupational license tax based upon the gross annual receipts of the business is assessed upon each person pursuing the business of contracting on a lump sum basis or any basis other than a cost-plus. See also LSA-R.S. 47:377.
The trial court after considering the record, the pleadings, as well as the exhibits and testimony, has adduced from the hearing before the Board of Tax Appeals that no penalties could be assessed against the taxpayer. The trial judge reasoned as follows:
"The Court is of the opinion that in failing to file returns the taxpayer was under *160 the belief that it had a legal right not to make such returns, and that the failure to file such returns was not done with any intention to avoid the payment of any tax legally further to be due. For this reason the Court is of the opinion that the penalties of $4,278.60 and $72.50 should not be assessed."
We find no fault in the reasoning of the trial judge but, on the contrary, concur with that conclusion. The judgment of the trial court is affirmed.
Affirmed.