CITY OF CARTERSVILLE *v.* McGINNIS *et al.; et vice versa.*

1. The act approved August 18, 1911 (Acts 1911, p. 919), entitled "An act to amend, consolidate, and supersede the several acts incorporating the City of Cartersville in the county of Bartow, State of Georgia," etc., is not unconstitutional because it does not distinctly describe the law to be amended.

2. Nor is the act open to the constitutional objection of a plurality of subject-matters, or that it contains matter different from what is expressed in the title thereof.

3. The recital, in the minutes of the municipality, of the enactment of the ordinance shows substantial compliance with the method prescribed by the charter for the enactment of ordinances.

4. The weighing ordinance of the City of Cartersville is not antagonistic to Civil Code (1910) §§ 1844-1850, and therefore is not invalid on the ground of special legislation concerning matter already provided for by a general law.

5. A municipal ordinance requiring, under appropriate penalty, bulky commodities, like cotton and coal, for sale within the city limits, to be weighed on public scales maintained by the city, is a valid exercise of police power.

6. The wisdom of legislation within the power of the municipality to enact is to be decided by the proper municipal authorities.

7. An ordinance requiring the weighing of heavy commodities, sold in bulk and by weight in the city limits, on the city scales, under an appropriate penalty, is not unreasonable and in restraint of trade. Such legislation is designed to prevent fraud and imposition upon the citizens, and is a legitimate market regulation.

8. A weighing ordinance, requiring that certain commodities shall be weighed on the public scales before being offered for sale in the municipality, must contain ample provision for compliance with its terms, and must be reasonably administered. The evidence does not show that the ordinance was being administered in an unreasonable manner.

9. That one may suffer in his business by the enforcement of an ordinance under the police power does not deprive a city of its right to a proper exercise of it.

10. The enactment and enforcement of a weighing ordinance is in discharge of a governmental function, and does not engage the city in commercial business.

11. While municipal authorities may lawfully pass an ordinance requiring bulky commodities intended to be sold in the municipality to be weighed on public scales, and that such commodities be sold in the municipality at that weight, yet they can not give to the public weigher full discretionary power to fix the tare and reductions from the gross weight of any article weighed "according to the custom of the trade, or as conditions necessary to fairness and justice require," and make the tare or reduction thus ascertained by him a conclusive determination of the same.

12. The charter limited the municipality to fixing the penalty by imprisonment to sixty days for the violation of an ordinance. The ordinance fixed the limit of imprisonment at ninety days. In so far as the time

fixed by the ordinance exceeded the limitation prescribed by the charter, the ordinance is invalid; but such excess in the time of imprisonment does not impair the validity of the ordinance as a- whole.

JULY 15, 1914.

Injunction. Before Judge Fite. Bartow superior court. November 1, 1913.

*John H. Wikle, Neel & Neel,* and *John T. Norris,* for City of Cartersville. *Finley & Henson,* contra.

EVANS, P. J. This is a petition by B. H. McGinnis and E. M. Goding against the City of Cartersville, to enjoin the enforcement of an ordinance requiring cotton and certain other bulky articles sold within the municipality to be weighed on the city scales. It was alleged that McGinnis was engaged in the business of buying and selling cotton under a municipal license, and that Goding was a weigher duly licensed by the ordinary in compliance with the Civil Code, (1910), § 1844 et seq., and engaged in the business of weighing cotton, and in the employment of his coplaintiff. The court temporarily restrained the defendant from enforcing the ordinance. Subsequently the restraining order was "modified so as to permit the defendant to continue weighing cotton for the public at ten cents per bale, but plaintiffs are required in the meantime to keep a strict account of the number of bales weighed by them during the continuance of the restraining order, to be reported to this court." After hearing evidence on the day set for the interlocutory hearing, the court continued the restraining order, as modified, until the further order of the court, and further directed that this order apply to all buyers of cotton and produce in the City of Cartersville. The City of Cartersville sued out a bill of exceptions, complaining of the continuance of the restraining order; and the plaintiffs sued out a cross-bill of exceptions, complaining that the court erred in refusing to grant a temporary injunction without the modifications imposed by the court.

The substantial features of the ordinance, so far as applicable to the facts of the case, are as follows: "An ordinance to provide for a public weigher and a system of public weighing, the regulation of weights and measures of cotton, coal, produce, and other commodities sold in the City of Cartersville. Section 1. The public weigher shall procure from the ordinary of Bartow county a set of standard weights and measures, and shall examine each and every

scale and other instrument for weighing and measuring in the city, and all weights and measures shall conform to standards, and for each examination and arrangement of said scales he shall 're-ceive the sum of ten cents, and shall stamp the instrument with the letter C." Section 2 provides for the report of persons using false weights and measures. Section 3 provides that "a system of public weighing is hereby established, and the scales put in service by the ordinance shall be the standard for the City of Cartersville." "Section 4. One or more city weighers shall be employed by the board of commissioners of said city, whose salary shall be $—— per month, and he shall be required to take an oath to justly, fairly, and impartially weigh all articles presented for weighing, and to give a true certificate or other evidence of each article weighed by him. He shall also be required to give bond with good security in the sum of $1,000 conditioned for the faithful performance of his duties as such public weigher." Section 5 provides for the appointment and removal from office of the public weigher. "Section 6. Every person, firm, or corporation, before selling in said city any cotton, hay, grain, produce, or other article, or anything sold in bulk from wagon or other vehicle, except as herein provided, [is required] to have same weighed by the public weigher, who shall make a record, upon a book kept for that purpose, of the date, description of article and weight, and the owner or person having same weighed, and at the same time make out in ink or indelible pencil a certificate or ticket showing the same information, with the correct weight thereof, and sign same in person; and such weight so certified shall be the weight by which such article shall be bought or sold in said city, and for which he shall collect a fee of ten cents, unless otherwise provided by law, to be paid by the owner or person having same weighed; and it shall be the duty, and the purchaser is hereby re-quired, to retain the ticket or certificate and deduct from the pur-chase-price the sum of ten cents for each bale of cotton and ten cents for each load or part of wagon-load weighed and certified by him. And the weigher shall daily collect from the purchaser the weighing fee aforesaid, and place same in the city treasury. In the event of any mistake in weight the person getting the advantage occasioned by such error shall refund or make good to the losing party the amount of such error on demand. Section 7. It shall be the duty of the public weigher to determine all questions of tare

or reduction from gross weights of any article weighed, according to the custom of the trade, or as conditions necessary to fairness and justice require; and his decision shall be considered the fair and correct reduction. And, in all weighing, to furnish a certificate of tare, gross, and net weight thereof." Section 8 provides for the attendance of the public weigher from sunup until sunset, equipped with necessary books, tags, and appliances for carrying out the provisions of the ordinance. Sections 9, 10, 11, 12, 13, 14, and 15 refer to the weighing of coal. "Section 16. Any person, firm, or corporation violating this ordinance shall on conviction be fined not exceeding $50, and confined in the city prison or work upon the public streets of the city chain-gang not exceeding ninety days. Either one or more or all of said penalties may be imposed in the discretion of the court; and in the event of violation of this ordinance by a corporation, its chief or managing officer shall be subject to the penalty herein provided, in the discretion of the court." The validity of this ordinance is attacked on the grounds, that the act incorporating the City of Cartersville is unconstitutional; that the ordinance was never adopted as required by the statute; and that it is void as being unreasonable and in restraint of trade, and as not affording due process of law.

1. The act approved August 18, 1911 (Acts of 1911, p. 919), entitled "An act to amend, consolidate, and supersede the several acts incorporating the City of Cartersville in the county of Bartow, State of Georgia; to create a new charter and municipal government for said corporation; to declare the rights and powers of the same; to provide for the creation of a board of commissioners for administering all the affairs of said city; to provide means by which legislation for said city can be initiated and franchises and ordinances referred to the qualified voters thereof for approval or rejection; and to provide for the recall of elective officers; and for other purposes," is attacked is being unconstitutional. It is insisted that the act collides with article 3, section 7, paragraph 17, of the constitution (Civil Code (1910), § 6445), which declares that no law shall be amended or repealed by mere reference to its title, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made, in that the act in question fails to describe the various acts incorporating the City of Cartersville which are amended, consolidated, and

superseded by the terms of that act. This constitutional provision does not embrace an act which does not purport to amend or repeal any particular law, but which is complete in itself; such an act may amend prior statutes without reference to them. It was held in *Bagwell* v. *Lawrenceville,* 94 *Ga.* 654 (21 S. E. 903), that "The phrase, 'An act to amend the several acts incorporating the Town of Lawrenceville,' is sufficiently descriptive of the law to be amended, the amending act not undertaking to expressly repeal or modify any of the provisions contained in the acts incorporating the Town of Lawrenceville, but only adding affirmative legislation which might have been constitutionally enacted without making any reference whatever to existing laws touching that town, the sole repealing clause in the act being the usual general clause repealing all conflicting laws and parts of laws." The doctrine of this case is that an act complete in itself may so operate on prior acts as to materially change or modify them, without being within the mischief designed to be remedied by this provision of our constitution. The act of 1911 provides a complete legislative plan of government, popularly known as a commission form of government, and provides means by which legislation can be initiated and franchises and ordinances referred to the qualified voters thereof for approval or rejection, and for the recall of elective officers, and for other purposes. The act provides a complete and independent form of municipal government. The fact that it confers powers previously exercised by other officers upon the commissioners is not so much an attempt to expressly amend or repeal any particular law as to establish a new and independent system of government, which, on account of its inconsistency, would have the effect of supplanting the old system.

While the constitutionality of the act may be sustained on the doctrine already stated, the act of 1911 designates the law to be amended in substantial compliance with the constitution. It has been held that an act of the legislature, entitled "An act to amend the charter of Ellijay, in the county of Gilmer, and to confer certain powers therein named," was not violative of the provisions of article 3, section 7, paragraph 17, of the constitution (Civil Code (1910), § 6445), on the ground that the act failed to sufficiently designate the previous acts of the General Assembly which constituted the charter of the town of Ellijay. *Shippen Lumber Co.* v. *Elliott,* 134 *Ga.* 699 (68 S. E. 509).

2. It is further contended, inasmuch as the act confers upon the newly elected commissioners, immediately upon their election, the powers and duties theretofore vested in the mayor and aldermen, the water, light, and bond commission, and the board of school commissioners, that the act of 1911 contains a different subject-matter from what is expressed in the title, and offends the constitutional demand that no law shall pass which refers to more than one subject-matter or contains matter different from what is expressed in the title thereof. Civil Code (1910), § 6437. The title of the act creating a new charter for the City of Cartersville provides for a government by commission, and that the board of commissioners therein created shall have power to administer all of the affairs of the city. In defining their powers and duties it is competent for the legislature to further provide that duties theretofore discharged by other officers shall be discharged by them. The matter contained in the section referred to is germane to the general purpose of the act, and does not subject the act to the criticism of plurality of subject-matters. *Mayor &c. of Americus* v. *Perry,* 114 *Ga.* 871 (40 S. E. 1004, 57 L. R. A. 230).

3. The ordinance is said to be invalid because it was not enacted pursuant to the requirements of the statute for the enactment of ordinances. The minutes of the municipality recite that "the following was passed by a full and favorable vote," the ordinance following the recital on the minutes, bearing a particular date, and purporting to have been signed by the mayor. The 16th section of the act of 1911 provides that "no ordinance or resolution of any kind or for any purpose shall become valid and effective until seventeen days after the same shall have been entered and signed by the mayor or by two of the other commissioners in open meeting; and the minutes shall show that it was so signed and approved, together with the date of such signature." The minutes fairly show that the ordinance was adopted by a vote of the mayor and commissioners at a meeting of the board, and that it was dated and signed by the mayor and duly entered upon the minutes as prescribed by the statute. The omission of an enacting clause does not invalidate the ordinance. Horr & Bemis on Municipal Police Ordinances, § 72. Even if such clause was necessary to its validity, in the absence of proof to the contrary the recital in the minutes that the ordinance was passed raises a presumption in favor of the regularity of its enactment. 28 Cyc. 396.

4. It is further contended that, under the constitutional prohibition against local legislation upon a subject already provided for by a general law (Civil Code (1910), § 6391), the ordinance is void, inasmuch as the subject-matter to which the ordinance relates is embraced in the Civil Code (1910), § 1844 et seq. These code sections make it unlawful for the weigher to weigh any bale of cotton or other article of produce sold by weight, without first taking and subscribing an oath to justly, impartially, and without deduction weigh all such cotton and other articles of produce sold by weight that may be shown to him for that purpose, and tender a true account thereof to the parties concerned, if so required; the weigher may nevertheless make such deduction for wet or other cause as may be reasonable, when the seller or his agent shall thereto consent, but in tendering a true account he shall state the gross and net weights, and the deduction. The weigher's oath must be recorded with the ordinary. It is further provided (§ 1850) that the corporate authorities of all cities and towns may make such further regulations for weighing as in their judgment may tend to effect the object of these code provisions, and that until altered by the municipal authorities the fees for weighing shall be such as are now fixed by law. The manifest object of these code sections is to secure fair and just weights in the disposal of agricultural products, and it is expressly declared that municipalities may make additional regulations to accomplish this object. The ordinance does not dispense with the taking and filing of the weigher's oath with the ordinary, as required by the statute, but requires an additional oath. The other provisions of the ordinance are not void because of any antagonism to these code sections.

5. The ordinance is assailed as being unreasonable and in restraint of trade. It is well established that ordinances regulating the character of weights to be used for cotton, coal, and other bulky articles sold and delivered within the corporate limits of a municipality are strictly an exercise of the police power. 3 McQuillin, Mun. Cor. § 970. In commenting on the power of cities in this respect Mr. Justice Peckham said: "Regulations respecting the pursuit of a lawful trade or business are of frequent occurrence in the various cities of the country, and what such regulations shall be, and to what particular trade, business, or occupation they shall apply, are questions for the State to determine, and their determi-

nation comes within the proper exercise of the police power of the State; and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not extend beyond the power of a State to pass, and they form no subject for Federal interference." Gundling *v.* Chicago, 177 U. S. 183 (20 Sup. Ct. 633, 44 L. ed. 725). The object of the ordinance is the prevention of fraud, by requiring cotton and other bulky articles sold in the city to be weighed upon correct scales by a sworn official of the city; and as this object is clearly within the police power, the ordinance will not be declared invalid unless its provisions are so arbitrary as to unreasonably interfere with the personal and property rights of those affected by its enforcement.

6. Much of the evidence on the interlocutory hearing bore upon the wisdom of the ordinance as affecting the quantity of cotton which would likely be brought into that market. We are inclined to think that the preponderance of the evidence tends to show that the probable effect of the enactment and enforcement of the ordinance will be to increase the cotton trade in Cartersville by insuring fair and correct weights of that commodity. But be that as it may, the commercial advantages or disadvantages resulting from the enactment of valid municipal legislation will not affect the validity of the ordinance.

7. The ordinance is said to be unreasonable because it forbids the sale of cotton and other bulky articles in the city, unless weighed on the city scales and certified by the weighmaster. It will be noted that the ordinance does not require products weighed in the city to be weighed on the public scales, where they are not to be sold or offered for sale within its limits. A municipality in the exercise of its police power may enact and enforce regulations for the protection of its inhabitants against false and fraudulent weights in the sale and exchange of bulky commodities. The power to make such regulation implies the power to enforce it, and the usual way of effectually enforcing such regulation is by provision in the ordinance that the seller shall not offer a commodity for sale within the city without production of the municipal weighmaster's certificate, under a prescribed penalty. City of Lamar *v.* Wiedman, 57 Mo. App. 507; Gaines *v.* Coates, 51 Miss. 335; State *v.* Tyson, 111

N. C. 687 (16 S. E. 238); Davis v. Town of Anita, 73 Ia. 325 (35 N. W. 244); McLean v. Arkansas, 211 U. S. 539 (29 Sup. Ct. 206, 53 L. ed. 315); Yates v. Milwaukee, 12 Wis. 673.

8. It is further urged that the requirement to weigh all cotton sold in Cartersville on the public scales is oppressive, because inadequate facilities are provided. The evidence does not show that any person has been hindered or inconvenienced in the sale of cotton or other article required to be weighed on the public scales. Two or three witnesses gave their opinion that it would be troublesome. and inconvenient to drive their teams to the public scales for the purpose of weighing cotton before offering it for sale in another part of the city. Such personal inconvenience should yield to the public good, and will not be accounted as sufficient cause for declaring the ordinance unreasonable. Of course, ample provision for weighing cotton and other articles under the ordinance must be provided by the city; otherwise its enforcement might be enjoined as an unreasonable administration of the law.

9. One of the plaintiffs contends that the enforcement of the ordinance will injure his business of buying and selling cotton. But whatever injury or inconvenience one may suffer in such cases, he is, in the eye of the law, compensated by sharing the common benefit resulting from the exercise of this power for the protection and benefit of the public. Deems v. Baltimore, 80 Md. 164 (30 Atl. 648, 26 L. R. A. 541, 45 Am. St. R. 339).

10. The requirement that all sales of certain commodities within the city shall be by the city weights, and the exaction of a market fee for each weighing, does not put the city into a business enterprise. The regulation of weighing cotton is in the discharge of a governmental function, and in no sense a private enterprise.

11. In addition to the provision of the ordinance in regard to the ministerial duty of weighing, the seventh section provides as follows: "It shall be the duty of the public weigher to determine all questions of tare or reduction from gross weights of any article weighed, according to the custom of the trade, or as conditions necessary to fairness and justice require; and his decision shall be considered the fair and correct reduction. And, in all weighing, to furnish a certificate of tare, gross, and net weight thereof." In addition to the general attack made upon the entire ordinance as being unreasonable, this section is specially attacked on the ground

that it is violative of the clause of the State constitution prohibiting the taking of property without due process of law, because purchasers and sellers are required to submit to the arbitrary decision of the public weigher, without appeal or other means of redress. The determination of all questions of tare or reduction from gross weights, according to the custom of the trade, or as conditions necessary to fairness and justice require, is something more than merely weighing the articles upon public scales and determining their weight by a fixed standard. It involves a determination of facts and the use of discretion or judgment beyond the mere weighing of articles. The section declares that the decision of the weigher shall be considered the fair and correct reduction to be made from the gross weights. No provision is made for any hearing or any method of redress or correction in regard to his decision. The objection raised to this section is therefore well taken. We confine ourselves to the ground of attack asserted against this section of the ordinance, and are not to be understood as holding whether or not it would be invalid as against any other objection than that urged. This provision of section seven enters into the scheme of the entire ordinance, and is expressly made applicable to every article provided to be weighed thereunder; and inasmuch as the section is void for the reason above stated, the whole ordinance will fall with it.

12. The 16th section is said to be repugnant to article 1, section 1, paragraph 3, of the constitution, in that it deprives persons of their liberty without due process of law, for the reason that the city has no authority under its charter to impose a penalty of confinement in the city prison, or work upon the public streets in the city chain-gang, of not exceeding ninety days, either or both, for the infraction of an ordinance. The charter of the city (Acts 1906, p. 596) provides that the police court "shall have power to punish all violations of the charter or any ordinance of the city by fine not to exceed two hundred dollars, imprisonment in the city prison, or in the county jail (having previously arranged with the county authorities) not to exceed sixty days, and to work on the streets in the city chain-gang, or such other place as the mayor or acting mayor may direct, not to exceed four months; and one or more of these punishments may be inflicted," etc. The provision in the ordinance for imprisonment in the city prison exceeds the city's

power by thirty days, but this clause is only void for the excess over the charter limit. City of Greenville *v.* Pridmore, 86 S. C. 442 (68 S. E. 636, 138 Am. St. R. 1058).

Some other attacks are made on the validity of the ordinance, but we do not consider them meritorious; and a statement of them is unnecessary, as they are more or less involved in the foregoing discussion. We think that the ordinance is invalid for the reason assigned, and that the court erred in refusing to grant an absolute injunction.

*Judgment affirmed on the main bill of exceptions, and reversed on the cross-bill. All the Justices concur.*