## J. EARL JACOBS ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 15, April Term, 1937.]

*Decided April 9th, 1937.*

The cause was argued, as of the January Term, before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, and JOHNSON, JJ.

*Harry O. Levin* and *Ernest F. Fadum,* with whom was *Sigmund Levin* on the brief, for the appellants.

*Allen A. Davis, Assistant City Solicitor,* with whom were *R. E. Lee Marshall, City Solicitor,* and *William H. Marshall, Assistant City Solicitor,* on the brief, for the appellees.

*William L. Marbury, Jr.,* as *amicus curiae.*

PARKE, J., delivered the opinion of the Court.

The amended bill of complaint in the pending cause was filed by John L. Smith, trading as Lord Baltimore Coal Company, against the Mayor and City Council of

Baltimore, a municipal corporation, and Charles D. Gaither, Police Commissioner of Baltimore City. For convenience the first-mentioned defendant will be here called "City," and the second, "Commissioner."

After a combined demurrer and answer of the City were filed, the City moved for leave to take testimony. The demurrer was withdrawn, J. Earl Jacobs and Lenore B. Fowble were given leave to intervene as parties complainant, and the parties took testimony before the chancellor, who dismissed the bill of complaint. From this decree the intervening complainants have brought the appeal at bar.

The original complainant carries on the business of buying, selling, trading in, and delivering coal in Baltimore City and other states. He takes orders from consumers of coal in the State of Maryland and purchases such coal in Pennsylvania, and then the coal is delivered in trucks of the complainant directly from Pennsylvania to the consumer in Baltimore. The dealer also buys coal at his place of business in Baltimore and resells it to consumers in the city and elsewhere; and, as a coal broker, he further buys and sells coal on commission. The interveners allege that they are engaged in the business of selling or transporting coal in Baltimore City to consumers in that city and there act as brokers in that business. The allegations of the amended bill of complaint and the relief there sought are adopted by the interveners.

The complaint is that, while the plaintiffs were severally carrying on their business, the City passed, on September 23rd, 1936, Ordinance No. 201, which became effective ten days later. The plaintiffs charge that the ordinance is void because it is illegal and unconstitutional. On the ground of its invalidity the relief prayed is a decree (a) declaring the ordinance void; (b) enjoining the City and the Commissioner from attempting to enforce it; and, finally, (c) granting such other and further relief as the nature of the cause may require.

The first objection to the ordinance is not pressed

and it is not found defective because of failure to comply in title or in unity of subject-matter with the requirements of the Baltimore City Charter, section 221 of article 4 of the Code (Flack) of Public Local Laws, vol. 1, pp. 1018, 1019. *Baltimore v. Wollman,* 123 Md. 310, 314, 91 A. 339. The objections relied on go to the substance of the ordinance, which was to regulate in Baltimore the traders by retail in coal, and those persons who deliver coal to retail consumers.

The ordinance embraces every retail coal dealer, who is defined to be any natural or legal entity severally or in association, his agents, servants, and employees, whether resident or nonresident, that shall engage in Baltimore City in the retail business of either selling or transporting coal to consumers in that city, or that shall there act as a broker in any such transaction or business. Every such dealer must have a license, which will be delivered to him, and which will then authorize him to act as a broker, seller, agent, or transporter of coal to consumers within the geographical limits of the city.

The application for a license must be made to the Municipal Bureau of Receipts, which receives it upon the payment of an application fee of one dollar and the submission of an application which shall contain information of (1) the name and business address of the applicant; (2) the purpose for which the license is desired; (3) the number, if any, of vehicles engaged in transportation which are owned, titled, and licensed in the name of the applicant and are to be used in the business, with their license, motor, and serial numbers and the type and make of the vehicles; and (4) the name of the surety on bond of $500 which the ordinance exacts. As a prerequisite to the issuance of the license, the applicant shall make, execute, and deliver to the Bureau of Receipts a good and sufficient bond, with surety to be approved by its executive head, in the penalty of $500, conditioned to save harmless any purchaser or purchasers involved in any transaction pertaining to any sale or delivery of coal

by the retail dealer wherein the purchaser shall suffer as a result of improper weighing or defective quality of coal delivered to him; and conditioned, also, to give to any party so suffering the right to maintain a direct action on the bond. If a licensee shall fail to maintain the bond as provided, the Bureau of Receipts shall revoke the license.

The ordinance further provides that the license issued shall contain all the information required in the application and an identifying number of the particular trader, and this license shall be displayed in the principal office of the trader. The licenses shall expire on June 30th of every year and shall be issued on a compliance with the stated provisions and the payment of the license fee of twenty-five dollars a year. If a license be issued for less than a year, the fee shall be apportioned on a monthly basis, but no fee shall be less than ten dollars and no refunds shall be allowed on revoked or remitted licenses.

Every licensee shall receive, upon the payment of a fee of one dollar, a certificate for each vehicle that is set forth in the application as one to be used for transportation. The certificate shall contain specified details for the identification of the dealer and the vehicle, with the applicant and his vehicle described in the application. The certificate shall be carried upon the particular vehicle of transportation, and shall be shown to any law enforcement officer, at his request, and to any retail purchaser before delivery of any coal is attempted. The ordinance makes similar provisions in respect of substitute or additional vehicles. There is a further obligation imposed upon the dealer to have his name and license number of a certain size placed and kept on the outer side of all vehicles used in the business.

The ordinance declares it unlawful for any dealer or distributor within the terms of the enactment to deliver coal unless the quantity be weighed. In the event coal is sold from a load in bulk in partial deliveries, every such portion must be first weighed separately and a ticket, which shall certify the weight in pounds and that this

weight was determined on scales tested and sealed by the local Division of Weights and Measures, must accompany the delivery.

The ordinance provides that it shall not apply to "the sale of coal in carload lots to a single consumer, or the sale or delivery of coal over the railroad coal piers to vessels or boats in the Harbor of Baltimore, nor shall it apply to or regulate the sale of coal in single paper sacks, or by single peck or bushel, provided the exemption is not utilized to avoid the provisions of this ordinance, nor shall it apply to those persons who haul their own coal supply in trucks titled in their own name."

For a first violation of the ordinance a fine of $50 and costs or a term of thirty days in jail is prescribed; and for every subsequent violation a fine of $100 and costs or an imprisonment of sixty days in jail is specified.

There is a section which provides that the invalidity of either a section or any part of a section shall not affect the validity of any remaining section or part of a section of the ordinance, in order that the legislative intention may be fulfilled; that, after the elimination of any parts which may be void, the ordinance shall be effective in the form left by the elimination.

The objections to this ordinance are: (1) That it exceeds the legislative power of the municipality; (2) that it is an unreasonable, discriminatory, and arbitrary exercise of power; and (3) that it is violative of the twenty-third article of the Declaration of Rights of Maryland and of the Fifth and Fourteenth Amendments to the Constitution of the United States in that the ordinance will deprive the persons within its terms (a) of the equal protection of the laws and (b) of liberty and property without due process of law.

1. The City has granted to it "full power and authority: * * *

"(14) Licenses.

"To license, tax and regulate all businesses, trades, avocations or professions. To license, regulate, tax or sup-

press hawkers, peddlers, brokers, pawnbrokers, intelligence officers, street exhibitions or fortune-tellers.

"(18) Police Power.

"* * * To have and exercise within the limits of the City of Baltimore all the power commonly known as the Police Power to the same extent as the State has or could exercise said power within said limits. * * *

"(31) Welfare and Other Powers.

"The foregoing or other enumeration of powers in this Charter shall not be held to limit the power of the Mayor and City Council of Baltimore, in addition thereto to pass all ordinances not inconsistent with the provisions of this Charter or the laws of the State as may be proper in executing any of the powers, either express or implied, enumerated in this section and elsewhere in this Charter, as well as such ordinances as it may deem expedient in maintaining the peace, good government, health and welfare of the City of Baltimore; and it may provide for the enforcement of all such ordinances by such penalties and imprisonments as may be prescribed by ordinance; but no fine shall exceed five hundred dollars, nor imprisonment exceed twelve months for any offense."

Code of Public Local Laws (Flack) vol. 1, art. 4, sec. 6, subsecs. 14, 18, 31, pp. 848, 851, 875; *R. B. Construction Co. v. Jackson,* 152 Md. 671, 674, 137 A. 278; *Gaither v. Jackson,* 147 Md. 655, 664, 665, 128 A. 769; *Rossberg v. State,* 111 Md. 394, 413, 74 A. 581.

The power to license and to regulate the retail sale and delivery of coal in Baltiore City thus clearly appears to have been conferred. Furthermore, this power has long been exercised by the City. Code of Public Local Laws (Flack) vol. 1, art. 4, secs. 535-540, pp. 1103-1105; Baltimore City Code of 1927, art. 20, secs. 32-33; Ordinance No. 141, approved February 23rd, 1932; No. 960, approved March 20th, 1930. And see regulatory measures, as, for example: Standard barrel for farm products (article 4 of Local Code, secs. 532-534) ; gas meters (sections 541-543) ; gaugers of casks and liquors (sections 544-551) ; inspection and weighing of hay and straw (sec-

tions 552-568) ; measure and stamp of carts or vehicles engaged in hauling wood (sections 590-599) ; markets (sections 704-708) ; oysters (section 735). And see Baltimore City Code of 1927, art. 20, sec. 1 (hay and straw) ; sections 4-23 (weights and measures) ; sections 24, 31 (charcoal); section 34 (firewood) ; sections 35, 36 (ice) ; sections 37, 38 (corn and mill feed) ; article 25, sections 45-51; articles 27 and 28.

The grant of power to the municipality is broad and comprehensive, and there can be no question of its possession of the corporate capacity to provide by ordinance for license and regulation of all kinds of business. The authority to impose a license fee may be employed as a regulatory measure or to produce revenue. *Gaither v. Jackson,* 147 Md. 655, 664, 128 A. 769. However, the fee exacted by the ordinance at bar has no relation to the value of the property which is the subject-matter of the business or occupation to be licensed, nor does the fee bear any relation to the equipment used in the business to be licensed. Again, the amount of the fee is not in excess of what would be reasonably necessary to issue the licenses and to inspect and regulate the business. So, the ordinance may not be regarded as a revenue measure, but must be considered as a regulatory measure in the exercise of the police power granted the municipality, unless it be either so unreasonable that it could not be assumed to have been contemplated by the grant of power or be in violation of some constitutional safeguard. *Dillon, Munic. Corp.* (5th Ed.) secs. 661-666 and 709; *Vansant v. Harlem Stage Co.,* 59 Md. 330; *State v. Rowe,* 72 Md. 548, 20 A. 179.

The provisions of the ordinance do not appear to be unreasonable. Either similar or analogous provisions occur in the enactments of the General Assembly of Maryland or in the ordinances of the municipality. *Supra.* An ordinance, such as the one in controversy, which prescribes an informative application, and the issue of a particular license, with certificates of an authorized use of every vehicle of transportation, for display in the oper-

ation of the business or occupation that must be conducted in accordance with regulations for identification and for a specified manner of weighing and delivery of the coal sold in the course of the business or occupation, and which also provides for an inspection of the coal sold in order to ascertain its conformity in quality and weight with express or implied representations, is an ordinance for the threefold purpose of preventing fraud and crime and its concealment; and these stated regulations plainly and reasonably tend in a substantial and appropriate manner toward the accomplishment of that purpose. This rational relation of means and end in the suppression of fraud and of crime and its concealment does not bring the ordinance within the saving scope of the police power unless it be for the public welfare as contradistinguished from a private purpose or for the benefit of particular individuals or classes. Nevertheless, an incidental benefit to a private purpose or particular individuals or classes that arises from the enactment will not render the ordinance invalid when it is an exercise of the police power because of the contemplated ensuing public benefits. The paramount public benefits of the ordinance are the prevention of fraud, and of crime and its concealment.

False scales and measures and fraud in weight have long been recognized as matters of public concern in respect of sales of food and fuel and other articles of general consumption whose nature or bulk afford opportunity for fraud. The prevention of stealing and the recovery of the article stolen are always of public concern. So, the prevention and suppression of traffic in unlawfully appropriated or possessed coal, or of fraud in the weight and quality of coal, are well within the police power.

Coal is a fuel in general use. It is bought at retail for domestic consumption in various quantities. Although it is divided into many grades, has distinct uses and varies greatly in weight and quality, it is all heavy, dirty, and cumbersome. When delivered in any but small quantities, it is not generally practicable for the buyer to weigh

the coal either before, at the time, or after unloading. Thus short weight in retail sales escapes detection to such an extent that the evil affects the public welfare.

While the court finds no unreasonable terms embodied in the ordinance, its reasons for holding that the exceptions found in section 10 of the ordinance are neither arbitrary nor discriminatory should be stated. The first exception is that the ordinance shall not apply to the sale of coal in carload lots to a single consumer or to the sale or delivery of coal over the railroad coal piers to vessels or boats in the harbor of Baltimore. The ordinance is clearly limited by its language to the transportation and delivery of coal over the thoroughfares of Baltimore City for retail consumers in vehicles adapted to that form of transportation, and this would *ex vi termini* exclude not only sales in "car load lots to a single consumer" and so unloaded at the railway track or siding, but also a sale or delivery from railroad coal piers to vessels or boats afloat in the harbor. The matter of these railway movements is committed to the Public Service Commission by this provision of the Public General Laws of Maryland, art. 23, sec. 369: "The commission shall have power to make, and by order shall make, reasonable regulations for the furnishing and distribution of freight cars to shippers, for the switching of the same, for the loading and unloading thereof, for demurrage charges in respect thereto, and for the weighing of cars and freights offered for shipment or transported by any common carrier." Constitution, art. 11A, sec. 3; *Williams v. Broening*, 135 Md. 226, 229, 108 A. 781; *Jones v. Broening*, 135 Md. 237, 239, 108 A. 785; *Gaither v. Jackson*, 147 Md. 655, 656, 128 A. 769.

The other exceptions are: First, that the ordinance shall not apply to the sale of coal in single paper sacks, or by single peck or bushel, provided the exemption is not utilized to avoid the provisions of the ordinance; and, second, that the enactment shall not apply to those persons who haul their own coal supply in trucks titled in their own name. The reason for the first exception is that sales and deliveries in the manner and quantities mentioned are

fully controlled and safeguarded by the provisions of sections 32 and 33 of article 20 of the Baltimore City Code of 1927. These sections create a separate division of retail purchasers of coal by grouping into a class such of the purchasers who buy coal in small quantities of a bushel or less. The division is based upon reasonable classification, since the members are distinguished from all other purchasers in that they, because of the small quantity bought, may quickly perceive and conveniently establish any shortage in weight or measure and, so, do not need the protective regulations of those who buy in a larger quantity. The second exception last above mentioned is ambiguous if read alone, but when read, as it must be, in connection with the other portions of the ordinance, and interpreted with reference to the subject-matter of the legislation, the meaning of the clause is that the ordinance does not apply to those who are not retail coal traders, if they haul their coal supply in trucks entitled in their own names.

Because of the nature of the commodity, of its general and necessary use, of its sale in mass, and its customary delivery in bulk, the customer at retail must, of practical necessity, confide in the dealer for fidelity in weight and quality. The average buyer is not competent to judge the quality of coal, nor has he available the means of determining the weight. The resultant advantage of the dealer, the confidence and dependence of the buyer in the transaction, afford the retail coal dealer exceptional facilities to impose upon the public in conduct of the business. The evil is so serious and bears so great a relation to the public welfare that the reasonable regulation of the sale of coal at retail in order to prevent deceit and fraud in quality and weight has become a recognized province of the police power. *Freund on Police Power*, sec. 275; 43 *C. J.*, secs. 451, 452, pp. 374, 375; *Dillon on Munic. Corp.* (5th Ed.) secs. 665, 709, 710; *McQuillan on Munic. Corp.* sec. 970; *Cartersville v. McGinnis*, 142 Ga. 71, 82 S. E. 487; *Stokes v. New York*, 14 Wend. (N. Y.) 87; *Brittingham Co. v. Sparta*, 157 Wis. 345, 147 N. W.

635. See *Libby v. Downey,* 5 Allen (Mass.) 299; *Pitts-burgh etc. Coal Co. v. Louisiana,* 156 U. S. 590, 15 S. Ct. 459, 39 L. Ed. 544; *Patapsco Guano Co. v. Board of Agriculture,* 171 U. S. 345, 18 S. Ct. 862, 43 L. Ed. 191; *Rast v. Van Deman & Lewis Co.,* 240 U. S. 342, 357, 36 S. Ct. 370, 60 L. Ed. 679-687; *Hauge v. Chicago,* 300 U. S. 387, 57 S. Ct. 241, 81 L. Ed. 297, affirming *Chicago v. Waters,* 363 Ill. 125, 130, 1 N. E. (2nd) 396; *Armour & Co. v. North Dakota,* 240 U. S. 510, 36 S. Ct. 440, 60 L. Ed. 771. See *Blitz v. James,* 31 Md. 264 (lumber); *Frazier v. Warfield,* 13 Md. 279 (wheat).

The terms of the ordinance thus far reviewed are commonplace in the legislation on the subject, but there yet remains for examination the requirement that the dealer give bond of indemnity in the sum of $500 for the protection of the purchaser. The exaction of a bond in cases where the danger of fraud depends upon the character of the person engaged in the business is not so usual, but Freund, in his work on *Police Power* (1904), calls attention to "a noteworthy tendency toward substituting for administrative discretion specific grounds of exclusion and guaranties by bonds, etc., against the misuse of the business for wrongful ends. While this tendency," he continues, "is not uniform, and cannot be said to have ripened into a constitutional principle, it represents an advance towards a better recognition of constitutional quality than the system of administrative discretion." Section 494, pp. 534, 535. This apposite expression of opinion by an authority on the subject matter was earlier exemplified by the municipal legislation of Baltimore City.

A pawnbroker in Baltimore City must secure a license and give a bond in the sum of $500, conditioned for the faithful observance of the regulations prescribed for his business, including the indemnification of any person for an injury or damage sustained by an act or default of the pawnbroker in his transactions. A right of action on the bond is given the person so wronged. (1879-1937) Baltimore City Code, (Flack) art. 25, secs. 30, 32, 37.

The ordinance which requires a license to be obtained and a bond given before an auctioneer may cry a sale has been in effect for many years. Public Local Laws (Flack) art. 4, secs. 240-271 (Charter, art. 1, secs. 240-271) ; *McMechen v. Baltimore* (1801) 2 H. & J. 41; *Id.*, 3 H. & J. 534; *Gaither v. Jackson,* 147 Md. 655, 128 A. 769. The recent ordinances of this type are the exaction for the benefit of the city of a bond of indemnity from those who are given a permit to use explosives within the city (a) and from master plumbers before they receive permits to do work (b) Baltimore City Code (1927) (a) art. 13, sec. 98; (b) Appendix B, sec. 32. See *Gant v. Oklahoma City,* 150 Okl. 86, 6 P. (2nd) 1065, 86 A. L. R. 794, annotations, 803, 804.

The illustrations now to be given and drawn from the general statutory law of the State are all later than the publication of Freund's work, but they serve to point the author's statement. Article 48, section 55A (Acts 1931, ch. 439), of the Code of Public General Laws (Supp. 1935) requires that any agent "which sell hogsheads of tobacco directly for the growers, shall first give a bond" in the penalty of $25,000 to protect said growers from any loss or losses sustained from failure of said agent. See *Payne v. Kansas,* 248 U. S. 112, 39 S. Ct. 32, 63 L. Ed. 153; *Arnold v. Hanna,* 276 U. S. 591, 48 S. Ct. 212, 72 L. Ed. 721. Article 65A, sections 5 and 6 (Acts of 1935, ch. 310), of the Code (Supp. 1935) require that every milk dealer who applies for a license to carry on his business shall, among other things, present with his application a bond or its equivalent in money, conditioned for the payment (a) of all obligations to producers within forty-five days after the receipt of milk and (b) of all other sums properly required by the Maryland Milk Control Commission. See *People of New York v. Perretta,* 253 N. Y. 305, 171 N. E. 72, 84 A. L. R. 636, and annotations, 640-644; and compare *State of Maine v. Old Tavern Farm,* 133 Me. 468, 180 A. 473, 101 A. L. R. 810, annotations, 827-829. And by sections 213 and 213A of article 56 of the Code of Public General Laws (Supp.

1935), a licensed dealer in any motor vehicle fuel is obliged to give bond to file reports and make payments of taxes, with penalties and interest, to the comptroller, and generally faithfully to comply with the statutory regulations imposed.

The examples mentioned demonstrate that the legislative bodies of the State and of Baltimore City have concluded and found the posting of a bond by a licensee to be a reasonable and effective regulatory measure to secure or tend to secure alike the receipt of public revenue, the payment of a debt, or the indemnification of the public against the fraud or deceit of the licensee, and thus to abate the evil. The legislation is clearly supported by the weight of authority. On principle and precedent the requirement of a retail coal dealer in the City of Baltimore that he furnish a bond in the penalty of $500 to indemnify a buyer of coal for loss or damage that he may suffer as a result of improper weighing or defective quality of coal delivered to him by the dealer is a reasonable regulation to insure honesty and care on the part of the licensee, and thereby prevent negligence, deceit, or fraud in the conduct of the retail coal business. *Supra; Chicago v. Waters*, 363 Ill. 125, 130, 1 N. E. (2nd) 396, and affirmed in *Hague v. Chicago*, 300, U. S. 387, 57 S. Ct. 241, 81 L. Ed. 297; *Bowen v. Hannah*, 167 Tenn. 451, 71 S. W. (2nd) 672; *Hicklin v. Coney*, 290 U. S. 169, 54 S. Ct. 142, 78 L. Ed. 247; *People of New York v. Beakes Dairy Co.*, 222 N. Y. 416, 119 N. E. 115, 3 A. L. R. 1260, annotations, 1271-1275 (debt of licensee). Compare *State of Florida v. Dillon*, 82 Fla. 276, 89 So. 558, 22 A. L. R. 227, and annotations, 230-235 (jitney busses); *In Re Opinion of Justices*, 81 N. H. 566, 129 A. 117, 39 A. L. R. 1023, and annotations, 1029-1032 (motor vehicles not operated for hire); and *In re Opinion of Justices*, 271 Mass. 582, 171 N. E. 294, 69 A. L. R. 388, annotations, 397-399; *Hicklin v. Coney*, 290 U. S. 169, 54 S. Ct. 142, 78 L. Ed. 247.

3. The necessity and propriety of the provisions of the ordinance are primarily a legislative question. The

court does not find them unreasonable, discriminatory, arbitrary, nor violative of the private rights of the individual, whether of person or property, but operative equally upon all embraced within its provisions and confined within the proper limits of the exercise of the police power.

The field of operation of the ordinance is a municipality of large area and a great population; these conditions afford the more facilities for fraud and deception in weight and quality of coal sold at retail, and increase the difficulties of detection and redress of these wrongs by the consumers. In this situation the provisions of the ordinance are well fitted for the protection and relief of the public against the evils mentioned, and will contribute to the public welfare in a matter of general and great importance.

So, the ordinance is not made invalid by either state or federal constitutional inhibitions, and the complainants have not established any ground of equitable relief. *Supra; Chesapeake & Potomac Tel. Co. v. State Board of Forestry,* 125 Md. 666, 667, 94 A. 322; *McAllister v. State,* 72 Md. 390, 392, 20 A. 143; *Pocomoke City v. Standard Oil Co.,* 162 Md. 368, 379, 159 A. 902; *Jack Lewis, Inc., v. Baltimore,* 164 Md. 146, 152, 153, 164 A. 220; *Jones v. Gordy,* 169 Md. 173, 181, 180 A. 272.

> *The decree will be affirmed, with costs to the appellees.*