CLAYTON YARGER *v.* STATE OF MARYLAND
[No. 1, October Term, 1938.]

*Decided June 29th, 1938.*

The cause was argued, as of the April Term, before

222

Bond, C. J., Urner, Offutt, Parke, Sloan, Mitchell, Shehan, and Johnson, JJ.

*John A. Cochran*, with whom were *Harry W. Allers* and *Harold M. Vick* on the brief, for the appellant.

*William L. Henderson*, Assistant Attorney General, with whom were *Herbert R. O'Conor*, Attorney General, and *William L. Marbury, Jr.*, on the brief, for the State.

Parke, J., delivered the opinion of the Court.

The traverser, Clayton Yarger, was indicted and convicted for the violation of chapter 349 of the Acts of 1937, which provided for the licensing of persons selling solid fuel in the State of Maryland, and for the regulation of transportation and sale of such fuel and of other related matters; and for fine and imprisonment for those who violate the commands of the statute. The appeal is from the judgment of the court in imposing the sentence; and brings here for review the constitutionality of the statute.

In its first section the statute defines the term "solid fuel" to mean and include anthracite and bituminous coal, with the exception of charcoal, and their various forms and combinations as fuel, unless sold by liquid or metered measure. The word "person" is used with the meaning of individual, partnership, association of individuals or corporations. After these preliminary definitions, section one of the statute contains lengthy subsections, which may be sufficiently stated in a summary.

The subsection 46BB prohibits a person to engage in the business of selling solid fuel as broker, dealer or otherwise, in the State of Maryland, unless he shall first obtain a certificate of registration as solid fuel dealer. The certificates are to be obtained on application to the clerk of the Court of Common Pleas in Baltimore or the clerk of the Circuit Court of any county, upon a blank to be furnished by the clerk in such form as shall be determined by the chief inspector of licenses of the State

License Bureau. The enactment prescribes certain details to be followed, which need not be stated. If the application be in form, and the filing and registration fees are paid, the clerk issues to the applicant a certificate of registration as a solid fuel dealer for an annual period, which begins on the first day of July in every year.

Should any one sell solid fuel in Maryland without having first obtained such certificate of registration, he is guilty of a violation of this subsection, and upon conviction may be fined or imprisoned or both fined and imprisoned. The subsection specifies that it "shall not apply to operators who have mines located in this State, and who sell coal at the tipple either in car loads or by truck."

The next succeeding subsection, 46CC, sets forth regulatory measures with reference to the certificates of registration mentioned. A certificate shall be revoked upon proof either of a false statement by the applicant in his application for the certificate, or of a violation of any provision of the act, but such a revocation shall be made only upon due complaint of some person, and after a hearing upon due notice to the holder of the certificate.

If complaint be made that the holder of such certificate has been buying, selling or transporting stolen anthracite within the State of Maryland, the chief engineer of the Bureau of Mines shall, after notice to the accused and hearing and finding that the complaint is well founded, notify the chief inspector of licenses, who shall thereupon revoke the certificate of registration; and notify the clerk of the Court of Common Pleas and the clerks of the Circuit Courts for the respective counties of such revocation, and no such clerk shall issue any further certificate for a period of one year from the date of such revocation. For the purpose of this subsection, anthracite coal taken from a commingled mass, any part of which is stolen, shall be deemed to be stolen anthracite.

Any person selling solid fuel in the State of Maryland

during the time that his certificate of registration as a solid fuel dealer has been revoked, is guilty of a violation of the provisions of the section now being stated, and upon conviction shall be punished by fine or imprisonment or by both fine and imprisonment.

The subsection next in order is 46DD, which contains certain regulations with reference to the deliveries of the fuel to the consumers. It is provided that all deliveries of solid fuel to purchasers who are its consumers, except if the fuel be sold in bags in lots of one hundred pounds or less and not exceeding a total of one quarter of a ton, shall be evidenced by a paper called a delivery ticket.

It is enacted that every delivery ticket shall be issued in triplicate, shall be serially numbered in each yard or branch and shall be used only in consecutive order. One shall be used as the delivery receipt, and shall be signed on its face by the recipient of the solid fuel or his agent. Another shall be given to the purchaser at the time of delivery. Where solid fuel is delivered in car load quantity to a single consumer or to one or more consumers who have agreed to divide a car load lot and who are transporting the solid fuel from the siding or have made arrangements for such transportation, the delivery ticket shall show merely the initial, number and location of the car from which said fuel was unloaded, the date of delivery and the name of the person making delivery.

Subsection DD specifies that every delivery ticket shall comply with certain formal requirements and furnish information of a prescribed kind. The person making the delivery must sign upon the original ticket and one of the duplicates a formal declaration that he has delivered the quantity and kind of coal specified in the ticket. The signature must be in ink or by indelible pencil, as must this information written with the signature on the face of the ticket; (a) date of issuance; (b) name and address of the person, firm, or corporation selling the solid fuel; (c) the name and address of the purchaser; (d) the quantity in pounds and the kind, grade and size

of the solid fuel delivered; (e) the signature of the licensed weighmaster issuing such ticket, together with his license number; and (f) the license number on the vehicle carrying the solid fuel.

Every driver or person in charge of a vehicle in which solid fuel is being transported for delivery to a purchaser within the State of Maryland shall have in his possession delivery tickets for the fuel so transported or delivered; and shall present them for inspection to any police officer, upon request, and to the purchaser before unloading or attempting to unload the vehicle. The actual amount of the load being transported or delivered shall not be less than the weight represented in the tickets, and the kind and size of the fuel being transported and delivered must conform to that given in the tickets, but in all cases sixty pounds to a ton may be considered as an allowance for variation in scales and wastage. If any person should transport or deliver such fuel in the state, in any other manner than is required by this subsection, he shall be taken as having violated its provisions, and be punishable by fine or imprisonment or by both.

The following subsection is 46EE, which exacts that no delivery ticket shall be issued unless the fuel has been weighed by a licensed weighmaster. There are various provisions to assure the appointment of qualified and trustworthy persons of good character as weighmasters, and to secure the faithful and accurate discharge of their office; and their removal for any breach of duty. While these provisions are of vital importance to the right administration of the law, they need not be elaborated, as they are not the subject of criticism.

The portions of the statute which have aroused attack will now be stated.

The weighmaster must weigh the fuel on scales located within the state which have been tested, approved and sealed but not unless, within twenty-four hours next preceding the weighing of the vehicle loaded, he shall have first weighed the vehicle empty to determine the true tare weight of the vehicle unloaded. With reference to

any load of anthracite transported or being transported into the State of Maryland by motor vehicle, the weighmaster shall not weigh up and sign a delivery ticket unless and until a duplicate original of the certificate of origin of such anthracite shall be filed with the weighmaster, and the weighmaster, upon signing a delivery ticket for a load of anthracite, shall make a notation upon the delivery ticket of the serial number and date of the certificate of origin for such load of anthracite.

The reference made in the preceding paragraph to the certificate of origin of the anthracite coal, which is brought into the State of Maryland by motor vehicle, is the certificate exacted by the terms of subsection 46FF. It is declared by this section that no such anthracite coal so brought into the State of Maryland "shall be hauled, transported, purchased, sold or delivered in the state unless such anthracite is at all times accompanied by an original certificate of origin containing the following information:

"(1) The name or names and location of, and the name or names of the owners or operators of, the breaker, colliery or other place or places of production where the anthracite to which the certificate refers, has been produced.

"(2) The kind, size and weight of the anthracite.

"(3) The name and address of person claiming ownership of said anthracite.

"(4) The name and address of the driver of the motor vehicle transporting said anthracite and the State motor vehicle registration number of said vehicle, and the date of loading of said vehicle.

"(5) The name and address of the person or persons to whom said anthracite is to be delivered."

Subsection 46FF further exacts that every driver of a motor vehicle, who brings anthracite into the state, shall, before delivery, proceed to a scale which is operated by a licensed weighmaster. At the time of weighing, the driver is obliged to file with the weighmaster a duplicate original of the above-described certificate of origin of the

anthracite carried. Within one week thereafter the weighmaster must file with the Bureau of Mines this duplicate original certificate, which shall be open to public inspection.

Should any person haul, transport, sell or deliver or cause, directly or indirectly, to be hauled, transported, sold or delivered any anthracite brought into the State of Maryland by motor vehicle, unaccompanied by a certificate of origin, or accompanied by a false, fraudulent, or unauthorized certificate, he shall be deemed guilty of a violation of the provisions of subsection 46FF, and shall be subject to a fine or imprisonment or to both such fine and imprisonment.

Subsection 46GG concludes section 1 and provides for the punishment of any violation of the statute for which a definite penalty has not been denounced.

Section 2 of the statute declares that if any provision of this act, or the application of it to any person or circumstance, is held invalid, such invalidity shall not affect any other provision or application of the act which can be given effect without the invalid provision or application, and to this end the provisions of the act and the application thereof to any particular person or circumstances are declared to be severable. In addition, section 2 contains this further statutory rule of construction: "It is particularly declared that if any provision of this Act or any application thereof shall be held to be invalid because of conflict with the Commerce Clause of the Constitution of the United States, the remaining provisions of the Act or the application of any provision of the Act to any person or circumstance not in conflict with said provision of the Constitution of the United States, shall be upheld."

The statute went into effect on June 1, 1937.

The traverser maintains that the demurrer to the indictment for violation of this Act should have been sustained on the ground that the enactment is void in that the Act is unconstitutional (first because it is in violation of section 1 of article 14 of the Amendments

to the Constitution of the United States (U. S. Code Ann. Const. Amend. 14, sec. 1), in that it is in denial to the traverser of the equal protection of the laws; and (secondly) because the Act is in conflict with section 8 of article 1 of the Federal Constitution (U. S. Code Ann. Const. art. 1, sec. 8, which confers upon Congress the power to regulate commerce among the several States.

In support of his position the traverser directs the argument to the provisions of subsections 46FF and 46EE. Before beginning the consideration of the questions raised on the brief of the traverser, it may be stated that the record does not present any difficulty in reference to the Act not being with respect to a subject matter well within the proper exercise of the police power. It is said in *Pocomoke City v. Standard Oil Company,* 162 Md. 368, at page 379, 159 A. 902, at page 906, that from the cases "these principles may be accepted as settled: (1) That restrictions imposed by the state or some agency of the state upon the use of private property cannot be justified under the police power unless they are reasonably necessary for the adequate protection of the public welfare, safety, health, comfort, or morals; (2) that whether such restrictions are reasonable in fact is a judicial question; (3) that when imposed by competent legislative authority the burden of proof in any such inquiry is upon him who challenges their validity, * * * and (4) when they are reasonably necessary for the adequate protection of the public welfare, safety, morals, or comfort, such restrictions will be regarded as a valid exercise of the police power unless they contravene some express constitutional prohibition." The regulation of the sale and delivery of coal is recognized as being within the proper exercise of the police power as thus announced. The recent developments in this industrial and commercial field have accentuated the necessity for regulation and have engaged the attention of legislative bodies other than of this State. Laws of New York, 1934, chapter 355, amending Agriculture and Markets Law sec. 197-a *et seq.;* 1936, chapter 546; 1937,

chapter 579, amending Agriculture and Markets Law sec. 197-a *et seq.;* Laws of Connecticut, 1937 Suppl. of the General Statutes, chapter 240; 1937 Revised Statutes of New Jersey, vol. 2, title 51, chapter 7. In *Jacobs v. Baltimore,* 172 Md. 350, 191 A. 421, this court consid-. ered the question, and it is not necessary to quote from so recent a decision in support of the conclusion that the subject matter of Chapter 349 of the Acts of 1937 is well within the proper exercise of the police power. *Chicago, B. & O. R. Co. v. McGuire,* 219 U. S. 549, 31 S. Ct. 259, 55 L. Ed. 328, 329.

Turning to the specific objections made to the constitutionality of the statute, and taking up the point that the traverser has been denied the equal protection of the laws, as guaranteed by the Fourteenth Amendment of the Federal Constitution, U. S. Code Ann. Const. Amend. 14, it will be found that the contention is made that the Act is discriminatory in that the provisions of subsection 46FF are limited to anthracite coal, and to coal brought into the state by motor vehicles; and that subsection 46EE requires that "No licensed weighmaster shall weigh up and sign a delivery ticket for any load of solid fuel unless * * * within twenty-four hours preceding the weighing of the vehicle loaded he shall have first weighed the vehicle empty to determine the true tare weight of the vehicle unloaded."

There is a natural difference between anthracite coal and bituminous coal, which is reflected in their nature, production, carriage, distribution, market, and use. It is because of this difference that the two kinds may be separately classified so as to exclude one from the other, without unreasonable discrimination being created. In the transportation and sale of anthracite there may exist evils and conditions which affect the public interest, and so require regulatory measures which would not be required with reference to bituminous coal and other than anthracite coal. The General Assembly of Maryland was familiar with local conditions and so concluded, and the court, in the absence of any proof to the contrary,

is not at liberty to infer the opposite. *Crescent Cotton Oil Co. v. Mississippi*, 257 U. S. 129, 42 S. Ct. 42, 66 L. Ed. 166; *Lindsley v. Carbonic Gas Co.*, 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369; *Smith v. St. Louis & Southwestern R. Co.*, 181 U. S. 248, 21 S. Ct. 603, 45 L. Ed. 847; *O'Gorman & Young v. Hartford Ins. Co.*, 282 U. S. 251, 257, 258, 51 S. Ct. 130, 131, 132, 75 L. Ed. 324; *Wampler v. Lecompte*, 282 U. S. 172, 51 S. Ct. 92, 75 L. Ed. 276; *Columbus & Greenville R. Co. v. Miller*, 283 U. S. 96, 51 S. Ct. 392, 75 L. Ed. 861; *Lawrence v. State Tax Commission*, 286 U. S. 276, 52 S. Ct. 556, 76 L. Ed. 1102.

It follows that the classification between the two kinds of coal, and the legislation with respect to anthracite, are not inherently unreasonable and discriminatory so as to be void on constitutional reasons. *Heisler v. Thomas Colliery Co.*, 260 U. S. 245, 254-256, 43 S. Ct. 83, 84, 85, 67 L. Ed. 237; *Id.*, 274 Pa. 448, 118 A. 394; *Commonwealth v. Alden Coal Co.*, 251 Pa. 134, 96 A. 246; *Commonwealth v. Lehigh Valley R. Co.*, 244 Pa. 241, 246, 90 A. 564, 566; *Frazier v. Warfield*, 13 Md. 279; *Blitz v. James*, 31 Md. 264.

The objection that the transportation is limited to the carriage of the coal in motor vehicles is untenable by a parity of reasoning. Motor vehicle transportation is as definitely characteristic and distinctive as railway carriage. The commercial importance, and varied service, of motor vehicle transportation, with its range, freedom, and facility of movement, necessarily subject it to police regulation in those uses and developments which touch and affect the public interest and welfare. The adaptability of motor vehicle transportation to rapid, irregular, and forbidden movement of freight and merchandise beyond any other facility engaged in carriage of things by land brings it surely and necessarily within the rules and principles of police regulation.

The transportation of coal by vehicles drawn by horse is, of course, not in the same category. Nor is the hauling of coal by railway or water comparable. Again, the cor-

rection and control of the abuses which have developed in the transportation and marketing of coal from neighboring states demands a separate treatment, as it is a distinct problem. *Jacobs v. Baltimore,* 172 Md. 350, 360, 191 A. 421; *Pittsburgh & S. Coal Co. v. Louisiana,* 156 U. S. 590, 601, 15 S. Ct. 459, 39 L. Ed. 544.

The second branch of the traverser's argument is that the Act imposes an unreasonable burden on interstate commerce. For this point it is urged that the requirement of subsection 46FF, which exacts a certificate of origin for coal brought into the state by motor vehicles, is an unlawful interference with interstate commerce. The regulation assailed is for the purpose of protecting consumers in Maryland against imposition and fraud. The regulation does not place upon the dealer any obligation which requires for its performance any burdensome outlay of money or effort. Nor is the importation of coal into the state by truck prohibited. The power of the state to enact laws for the protection and welfare of its citizens is not denied by the Federal Constitution. Its laws may be made applicable to interstate transportation, provided the legislation is reasonable, and is not forbidden by federal law, and does not deal with a subject matter in which uniformity of regulation is obligatory. Under proper conditions, state regulation is allowable even though it may impose a direct burden upon interstate transportation (1). *Cooley v. Board of Wardens,* 12 How. 299, 13 L. Ed. 996; *Savage v. Jones,* 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182; *Sligh v. Kirkwood,* 237 U. S. 52, 35 S. Ct. 501, 59 L. Ed. 835; *Reid v. Colorado,* 187 U. S. 137, 23 S. Ct. 92, 47 L. Ed. 108; *Mintz v. Baldwin,* 289 U. S. 346, 53 S. Ct. 611, 77 L. Ed. 1245; *South Carolina State Highway Department v. Barnwell Bros.* 302 U. S. 177, 58, S. Ct. 510, 82 L. Ed. 734; *E. Pat Kelly v. State of Washington,* 302 U. S. 1, 58 S. Ct. 87, 82 L. Ed. 3. (1) *Hendrick v. Maryland,* 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; *Kane v. New Jersey,* 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; *Patapsco Guano Co. v. Board of Agriculture,* 171 U. S. 345, 18 S. Ct. 862,

43 L. Ed. 191; *Red "C" Oil Mfg. Co. v. Board of Agriculture,* 222 U. S. 380, 32 S. Ct. 152, 56 L. Ed. 240; *Morris v. Duby,* 274 U. S. 135, 47 S. Ct. 548, 71 L. Ed. 966; *Interstate Busses Corp. v. Holyoke Street R. Co.,* 273 U. S. 45, 47 S. Ct. 298, 71 L. Ed. 530; *Minnesota Rate Cases,* 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511; *Pittsburgh & S. Coal Co. v. Louisiana,* 156 U. S. 590, 15 S. Ct. 459, 39 L. Ed. 544; *Pure Oil Co. v. Minnesota,* 248 U. S. 158, 161, 162, 39 S. Ct. 35, 63 L. Ed. 180; *New Mexico ex rel. McLean & Co. v. Denver etc. R. Co.,* 203 U. S. 38, 53, 27 S. Ct. 1, 51 L. Ed. 78; *Continental Baking Co. v. Woodring,* 286 U. S. 352, 52 S. Ct. 595, 76 L. Ed. 1155; *Baldwin v. G. A. F. Seelig, Inc.,* 294 U. S. 511, 55 S. Ct. 497, 79 L. Ed. 1032.

The objection to the Act on the ground that it prevents the licensed weighmaster to issue a delivery ticket for any load of solid fuel "unless * * * within twenty-four hours preceding the weighing of the vehicle loaded he shall have first weighed the vehicle empty to determine the true tare weight of the vehicle unloaded" should be considered in connection with its effect upon interstate transportation of coal. This requirement, to the extent that it is applicable to interstate transportation, is unreasonable and unnecessary, and, therefore, an unlawful restraint upon interstate commerce.

The rule would require the unloading and reloading at the scales of every motor vehicle engaged in interstate transportation which was not so near the state of destination that the vehicle could be weighed before it went to get its load and return with its load to be weighed within the period of twenty-four hours. Even if this could be done, the time lost would make the requirement unreasonable. The effect of section 2 of the Act, in providing for the elimination of any provision of the act to the extent that it would be in conflict with the Commerce Clause of the Constitution of the United States, would be to leave the requirement last under consideration valid as to intrastate movements of anthracite coal, but invalid as to interstate transportation. So, the stoppage in

transit of a loaded motor vehicle, which is engaged in interstate transportation, to be weighed by the vehicle being emptied of its load and weighed, and then reloaded and weighed in order that the net weight of the coal for delivery may be certainly known, must be held illegal to the extent of its affecting interstate carriage of anthracite. This defect does not, however, vitiate any of the several counts of the indictment, because the severability section, with which the statute concludes, saves the whole Act from being nullified.

The first, second and third counts charge in varying form the traverser with operating his motor vehicle in the State of Maryland without having a proper certificate of origin as provided in subsection 46FF, and the fourth count charges the traverser with having failed to proceed to a scale operated by a licensed weighmaster. The fifth count charges the traverser with unlawfully engaging in the business of selling solid fuel as a broker, dealer and otherwise, and with failing to obtain a certificate of registration under subsection 46BB. The final seventh count charges the traverser with a failure to have delivery tickets of the proper form within the meaning of subsection 46DD.

The demurrer to the sixth count of the declaration should have been sustained. The gravamen of the offense alleged is that the traverser was a driver and person in charge of a vehicle in which solid fuel was being transported and delivered to a certain unknown person within the state, and not to and from a boat, and unlawfully did fail to have in his possession delivery tickets for the solid fuel being so transported and delivered. The count was framed under section 46DD, and is bad in neglecting to state that the purchaser was a consumer, and in not negativing the exception made by the statute, that solid fuel transported is not within the section if sold in bags of one hundred pounds or less, not exceeding a total of one-quarter ton. No harm resulted to the traverser from this error, as the record shows the conviction was upon the other counts of the indictment.

No point is made, nor arises on this record, with respect to the clause of the statute which has here been declared invalid. As no error is found on this record which resulted in material prejudice to the traverser, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*